CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 29 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | Civil Action No. 7:08cv00340 ) ) |
| DRUMMOND COAL SALES, INC., | ) By: Hon. Michael F. Urbanski ) United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

More than a decade ago, the parties to this case entered into a contract pursuant to which plaintiff Norfolk Southern Railway Company agreed to haul for defendant Drummond Coal Sales, Inc. certain coal products by rail from Charleston, South Carolina to various other destinations. In May 2008, Norfolk Southern filed suit against Drummond alleging breach of that contract. The undersigned, then a United States Magistrate Judge, conducted a settlement conference on December 14, 2009, at which the parties reached a resolution of their dispute. The resolution was memorialized in a Settlement Agreement, pursuant to which Drummond agreed to pay Norfolk Southern a certain sum and the parties agreed to amend various provisions of the contract and extend the contract term through 2019. The parties further agreed that any disputes concerning the terms of the Settlement Agreement would be resolved by the undersigned. A Mutual Release was executed and the action thereafter was dismissed.

In January 2016, Drummond brought suit on the contract in the Northern District of Alabama. Norfolk Southern filed a motion to transfer venue to the Western District of

Virginia in the Alabama case and simultaneously filed the Motion to Reopen the Case, Assign to Judge Urbanski, and Enforce Settlement Agreement and Mutual Release that is currently pending in the instant case. The case was reopened, transferred to the undersigned, and a hearing was held on May 10, 2016 on Norfolk Southern's motion to enforce the Settlement Agreement and Mutual Release. At the court's request, the parties filed supplemental briefs and the matter is now ripe for adjudication.

For the reasons set forth herein, the court finds that Counts One and Two of Drummond's Alabama complaint are barred by the Mutual Release. Counts Three through Seven assert claims stemming from circumstances alleged to have arisen after the parties' settlement. Thus, these counts do not directly implicate the terms of the Settlement Agreement or the scope or construction of the Mutual Release. This court does not have jurisdiction to consider the merits of Counts Three through Seven absent a decision by the presiding district judge in the Northern District of Alabama that this is a more convenient forum and a transfer of the case pursuant to 28 U.S.C. § 1404(a). As such, Norfolk Southern's Motion to Reopen the Case, Assign to Judge Urbanski, and Enforce Settlement Agreement and Mutual Release (ECF No. 85) will be **GRANTED in part** and **DENIED in part**.

I.

On January 20, 2006, Norfolk Southern and Drummond entered into a contract for the transportation of coal and coal products from a terminal in Charleston, South Carolina to Drummond's utility customers at various destinations. The term of this Transportation Contract C-9337 (the "2006 Transportation Contract") began December 31, 2005 and ended

2

July 31, 2016. The 2006 Transportation Contract required Drummond to ship a minimum volume of coal each year of the contract term and pay Norfolk Southern a shortfall fee if it failed to meet that guaranteed volume. It further provided that Norfolk Southern would build specific improvements to its rail infrastructure in South Carolina in order to facilitate the coal transportation contemplated under the agreement. Drummond agreed to pay Norfolk Southern for the cost of the infrastructure improvements up to a certain amount. Per the contract terms, Norfolk Southern then would refund that cost at a rate per net ton of coal shipped from Charleston via Norfolk Southern until the infrastructure costs paid by Drummond to Norfolk Southern had been fully refunded.

Norfolk Southern filed the instant action in May 2008, alleging Drummond had breached its obligations under the 2006 Transportation Contract—specifically, its obligations to pay infrastructure improvement costs and ship guaranteed volumes or, alternatively, pay the required shortfall fees for years 2007 and 2008. For its part, Drummond asserted that, pursuant to paragraph 29 of the 2006 Transportation Contract, it notified Norfolk Southern on April 4, 2006 of a force majeure event impacting its ability to transport the guaranteed volumes of coal to Norfolk Southern and any failure to perform under the contract therefore was excused. The force majeure event was alleged to be Kinder Morgan's failure to expand its Shipyard River Terminal in Charleston, which, according to Drummond, significantly reduced the amount of coal that Drummond could deliver to Norfolk Southern.

The parties ultimately reached a resolution of the contract dispute that was the subject of the instant case at a December 14, 2009 settlement conference conducted by the

3

undersigned, then serving as United States Magistrate Judge. The resolution was memorialized in a Settlement Agreement, which provided for:

- payment of a certain sum by Drummond to Norfolk Southern
- extension of the term of the 2006 Transportation Contract through December 31, 2019
- reduction in the guaranteed volume of coal per year Drummond is required to ship via Norfolk Southern pursuant to the 2006 Transportation Contract
- as to future shipments, credit to Drummond per short ton shipped until the remaining infrastructure balance is repaid and, thereafter, a reduction in credit due Drummond per short haul as well as credit for all other hauls for the remaining term of the 2006 Transportation Contract
- amendment of the 2006 Transportation Contract to conform to the terms of the Settlement Agreement
- execution of a complete Mutual Release by the parties
- resolution by the undersigned of any disputes regarding the terms of the Settlement Agreement

Settlement Agreement, ECF No. 86-1.

As contemplated by the Settlement Agreement, the parties executed a Mutual Release dated January 14, 2010, in which each party agreed to release the other

> from all claims, demands, debts, causes of action, or obligations of any kind whatsoever, known or unknown, arising or accruing from the beginning of time to the Effective Date of this mutual release, and arising out of the formation or performance of the Contract, including but not limited to all claims, defenses or

4

> avoidances made or asserted in the action, and all claims, defenses or avoidances that could have been made or asserted in the Action.

Mutual Release, ECF No. 86-2, at ¶¶ 3, 4. Additionally, the Mutual Release provides:

> 7. In the event any future dispute arises concerning the scope or construction of this mutual release, the undersigned parties agree that, as a material element of the Settlement Agreement, such dispute shall be submitted to Judge Michael F. Urbanski, or, should he no longer be sitting as a judge, such successor of his as may be sitting as a United States Magistrate Judge at Roanoke, Virginia, for resolution.

Id. at ¶ 7.

The parties also executed an amendment to the 2006 Transportation Contract, titled "Amendment Number 1 to the Transportation Contract NS-9337," pursuant to the terms of the Settlement Agreement. The recitals to Amendment Number 1 state that Norfolk Southern and Drummond are "parties to that certain transportation contract designated C-9337 dated as of January 20, 2006," that "the parties have entered into that certain Settlement Agreement dated as of December 14, 2009, specifying certain amendments to be made to the Contract," and that "the parties desire to amend the Contract pursuant to the Settlement Agreement and pursuant to 49 U.S.C. Section 10709." Amendment Number 1, ECF No. 86-3. Amendment Number 1 goes on to outline revisions to Article 3, Article 20(a), (b) and (c), Article 27(e)(1), (2) and (3), Article 27(g), and Article 29 of the 2006 Transportation Contract, reflecting the terms of the parties' settlement. The final paragraph

5

8 of Amendment Number 1 provides: "Except as amended herein, the Contract[1] shall remain in full force and effect." Id.

The breach of contract action was dismissed with prejudice by order entered January 19, 2010, which also provided that the court would retain jurisdiction to enforce the Settlement Agreement. Dismissal Order, ECF No. 84.

By letter dated January 29, 2016, Drummond gave Norfolk Southern notice of a force majeure event, namely

> governmental environmental regulation that has caused the destination power plants identified in the Contract to either close completely or substantially reduce their use of coal. This Force Majeure Event prevented [Drummond] from performing under the Contract during 2015, and absent unforeseen changes in circumstances, will likely prevent [Drummond] from performing under the Contract in 2016.

Force Majeure Letter, ECF No. 86-5. That same day, Drummond filed a complaint against Norfolk Southern in the Northern District of Alabama seeking declaratory relief, unjust enrichment, and rescission, modification or reformation of the parties' contract as amended on January 12, 2010 (the "Amended Contract"). See Case No. 2:16-cv-180-AKK, ECF No. 1 (N.D. Ala. filed Jan. 29. 2016). Drummond alleges in Count One that the Amended Contract is void because it is unconscionable, contains illegal and unenforceable penalties, and lacks mutuality of obligation and consideration. In Count Two, Drummond seeks monies "paid since 2011 under this void Contract," as well as amounts yet to be refunded for infrastructure improvements to Norfolk Southern's rail lines. Count Three seeks a declaration that Drummond's performance under the Amended Contract is excused due to

---

[1] The "Contract" is defined in the recitals to Amendment Number 1 as "that certain transportation contract designated C-9337 dated as of January 20, 2006." Id.

6

Norfolk Southern's failure to meet its obligation to work with Drummond in good faith to find alternatives that would allow Drummond to meet guaranteed volumes and avoid shortfall fees. Counts Four through Six of Drummond's Alabama complaint all stem from Drummond's allegation that environmental regulations have caused reduction in use of imported coal by power plants specified as destinations under the Amended Contract. Specifically, Count Four alleges a force majeure event, Count Five frustration of purpose, and Count Six impossibility/impracticability of purpose. Count Seven of the Alabama complaint seeks rescission, modification, or reformation of the Amended Contract "[t]o the extent the Court declares in [Drummond's] favor, in whole or in part, as set forth above." Ala. Compl., ECF No. 86-4.

Norfolk Southern filed an answer to Drummond's Alabama complaint on February 25, 2016 and simultaneously filed a motion to transfer the case to the Western District of Virginia pursuant to 28 U.S.C. § 1404(a). The same day, Norfolk Southern filed a Motion to Reopen the Case, Assign to Judge Urbanski, and Enforce Settlement Agreement and Mutual Release on this court's docket. On March 4, 2016, the district judge to whom this case was originally assigned granted Norfolk Southern's motion in part by reopening this action and transferring it to the undersigned. A May 10, 2016 hearing was scheduled on the remaining issues raised.

Meanwhile, the parties briefed Norfolk Southern's motion to transfer venue in the Alabama case and appeared before United States District Judge Abdul K. Kallon for a hearing on March 25, 2016. Following that hearing, Judge Kallon entered an order staying the case as well as any ruling on the pending motion to transfer, in order to allow the

undersigned to consider whether the claims asserted by Drummond are implicated by the parties' Settlement Agreement.

To that end, the parties appeared before the undersigned on May 10, 2016 for argument on Norfolk Southern's motion. At the court's request, the parties submitted supplemental briefing on the issue of whether, should the court agree with Norfolk Southern that certain counts of Drummond's Alabama complaint are barred by the Mutual Release, the remaining counts should be resolved in this district or in the Northern District of Alabama. The issues have been fully briefed and the matter is now ripe for adjudication.

## II.

The parties to this case presently are fighting a two-front war. Endeavoring to determine the proper venue for this dispute, the court first considers its authority under the parties' Settlement Agreement and Mutual Release and then determines whether the claims raised by Drummond in its Alabama complaint fall within the court's jurisdiction.

### A.

"[D]istrict courts have inherent authority, deriving from their equity power, to enforce settlement agreements." Hensley v. Alcon Laboratories, Inc., 277 F.3d 535, 540 (4th Cir. 2002). To exercise that authority, a court must find the parties have reached a complete agreement and must be able to determine its terms and conditions. Id. at 540-41 (citing Moore v. Beaufort Cnty., 936 F.2d 159, 162 (4th Cir. 1991); Ozyagcilar v. Davis, 701 F.2d 306, 308 (4th Cir. 1983)). "Motions to enforce settlement agreements draw upon standard contract principles." Bradley v. Am. Household Inc., 378 F.3d 373, 380 (4th Cir. 2004) (citing Hensley, 277 F.3d at 540).

8

The parties do not dispute that following a settlement conference on December 14, 2009, they reached a complete agreement to settle the claims raised in the instant case arising out of the 2006 Transportation Contract. This agreement was memorialized in a written Settlement Agreement dated December 14, 2009. The terms of the parties' settlement are clear and unambiguous. The Settlement Agreement provided for payment by Drummond to Norfolk Southern, extension of the Transportation Contract through 2019, and changes to certain provisions of the 2006 Transportation Contract. The parties agreed to amend the 2006 Transportation Contract to reflect those changes and further agreed to execute "a complete mutual release of all claims against all parties in this case." Settlement Agreement, ECF No. 86-1, at ¶ 7. Consistent with their agreement, the parties entered into Amendment Number 1 to the Transportation Contract NS-9337 on January 12, 2010. Amendment Number 1, ECF No. 86-3. On January 14, 2010, they executed a Mutual Release in which each party released the other

> from any and all claims, demands, debts, causes of action, or obligations of any kind whatsoever, known or unknown, arising or accruing from the beginning of time to the Effective Date of this mutual release, and arising out of the formation or performance of the Contract, including but not limited to all claims, defenses or avoidances made or asserted in the Action, and all claims, defenses or avoidances that could have been made or asserted in the Action.

Mutual Release, ECF No. 86-2, at ¶¶ 3, 4. The parties also expressly agreed that:

> In the event any future dispute arises concerning the scope or construction of this mutual release, the undersigned parties agree that, as a material element of the Settlement Agreement, such dispute shall be submitted to Judge Michael F. Urbanski, or, should he no longer be sitting as a judge, such successor of his as may be sitting as a United States Magistrate Judge at Roanoke, Virginia, for resolution.

9

Id. at ¶ 7; see also Settlement Agreement, ECF No. 86-1, at ¶ 12 (providing disputes regarding the terms of the Settlement Agreement shall be resolved by the undersigned).

Neither party challenges the validity of the Settlement Agreement and Mutual Release. Rather, the question presented is whether the contract claims recently raised by Drummond in its Alabama complaint were released in connection with the settlement of the instant case. As that question concerns the scope and construction of the Mutual Release, it is properly pending before the undersigned pursuant to the parties' forum selection clause. See Mid Atl. Paper, LLC v. Scott Cty. Tobacco Warehouses, Inc., No. 1:03CV00126, 2004 WL 326710, at *1 (W.D. Va. Feb. 23, 2004) (Jones, J.) ("Forum selection clauses are enforceable, so long as they are not unreasonable or unjust, or obtained by fraud.").

## B.

The court now turns to the specific claims raised by Drummond in its Alabama complaint. Norfolk Southern argues Counts One, Two, and Seven are barred by the Mutual Release. Drummond insists all of its Alabama claims arise out of the new, stand-alone contract executed by the parties in 2010—not the original 2006 Transportation Contract— and therefore are properly pending in its preferred forum, the Northern District of Alabama.

### 1.

The court disagrees with Drummond that the parties entered into a separate, stand-alone contract in 2010. Drummond relies on Smith v. Snyder, 82 Va. 614, 618 (1886),[2] for the principle that "where a valid, binding change is made in a contract, the old one is done

---

[2] The 2006 Transportation Contract contains a choice-of-law provision, stating that interpretation and performance of the Contract shall be governed by the laws of the Commonwealth of Virginia. 2006 Transportation Contract, ECF No. 86-3, at ¶ 5.

10

away with, and a new one is substituted for it." Smith concerned the appropriateness of certain jury instructions. The parties entered into a contract for delivery of iron on September 19, 1879. In a breach of contract suit, Snyder contended he was entitled to immediate delivery of the iron. However, Snyder had written Smith on October 11, 1879, agreeing to wait three weeks, until November 1, 1879, for delivery. The Virginia Supreme Court held that by so agreeing, "Snyder had so bound himself that he could not have brought suit before that date; and such a binding promise is the making of a new contract and an abrogation of the old one." Id. at 617. The record reflected that this promise to wait an additional three weeks for delivery was entirely voluntary on Snyder's part. Thus, the Supreme Court held that the circuit court erred in refusing to instruct the jury that Snyder was not entitled to sue on the original contract if he indeed intended to bind himself to wait an additional three weeks from the date of his October 11, 1879 letter.

Smith stands for the proposition that one cannot sue under an original term of a contract if that term has been amended by agreement of the parties—specifically, in Smith, it was the term of delivery. Smith does not support Drummond's argument that the 2010 Amendment Number 1 to the 2006 Transportation Contract created a new, discrete agreement between the parties. Amendment Number 1 plainly reads as an amendment to a handful of the 2006 Transportation Contract's provisions and expressly states that the remainder of the original Contract remains in full force and effect. See Amendment Number 1, ECF No. 86-3, at ¶ 8. As such, the court cannot find that Amendment Number 1 is a novation.

11

"[N]ovation is defined as a mutual agreement among all parties concerned for discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another." Honeywell, Inc. v. Elliott, 213 Va. 86, 89, 189 S.E.2d 331, 334 (1972). Novations are never to be presumed; rather, "'to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement.'" J.M. Turner & Co. v. Delaney, 211 Va. 168, 172, 176 S.E.2d 422, 425 (1970) (quoting Arlington Towers Land Corp. v. McFarland, 203 Va. 387, 392, 124 S.E.2d 212, 215 (1962)). The essential elements are "a previous valid obligation, the agreement of all parties to the new contract, the extinguishment of the old contract, and the validity of the new contract." Honeywell, 213 Va. at 89-90, 189 S.E.2d at 334. Proof of these elements must be clear and satisfactory. Id. at 89, 189 S.E.2d at 334. Whether an intention to effect a novation existed "is to be determined from all the facts and circumstances incident to the new agreement." Dillenberg v. Thott, 217 Va. 433, 435, 229 S.E.2d 866, 868 (1976) (citing Mitchell v. Cox, 189 Va. 236, 243, 52 S.E.2d 105, 109 (1949)).

The court rejects Drummond's contention that the 2010 Amendment Number 1 extinguished the provisions of the 2006 Transportation Contract and substituted a new, stand-alone contract. There is simply no way to read the document titled "Transportation Contract NS-9337 Amendment Number 1" to be a novation. Cf. J.M. Turner, 211 Va. at 172 ("The July 1964 letter standing alone is not an enforceable contract since it does not even describe the subject matter of the contract between the parties."). Nothing in this document, the Settlement Agreement, or the Mutual Release suggests an intention by the parties to create a new contract in 2010 that supersedes the 2006 Transportation Contract.

12

See Settlement Agreement, ECF No. 86-1, at ¶ 5 ("The parties agree to amend the existing Transportation Contract to conform to this Settlement Agreement."); Mutual Release, ECF No. 86-2 (reciting that the Settlement Agreement contemplates that the parties will "make certain amendments to the Contract in order to conform the Contract to the Settlement Agreement"). Indeed, the entire purpose of Amendment Number 1 was to incorporate the terms of the parties' settlement into the existing 2006 Transportation Contract. Amendment Number 1 expressly states it is a "Contract Amendment," in which the parties contemplate the Transportation Contract "shall remain in full force and effect" except as amended therein. Amendment Number 1, ECF No. 86-3, at ¶ 8. More still, Drummond represents in its Alabama complaint that the parties' 2006 Transportation Contract "was amended on January 12, 2010," and Drummond uses the term "Contract" throughout its complaint to describe "[t]he contract as amended." Ala. Compl., ECF No. 86-4, at ¶ 7. There is simply no merit to Drummond's argument that the parties entered into a new, stand-alone contract in 2010. Amendment Number 1 must be read together with the 2006 Transportation Contract (referred to herein as the "Amended Contract").

**2.**

Drummond contends that none of its Alabama claims are barred by the Mutual Release because all arise out of the Amended Contract and events that occurred in 2010 and beyond. Drummond insists "[n]o relief is sought for any payments made by [Drummond] under the 2006 Contract." Drummond Opp. Br., ECF No. 97, at 3. The court cannot agree.

13

*a) Count One*

Count One of the Alabama complaint seeks a declaration that the Amended Contract is void. Drummond alleges Norfolk Southern enjoys (at worst) monopolistic and (at best) oligopolistic bargaining power with respect to the destinations covered under the agreement. It claims it had little choice but to accept whatever contract terms Norfolk Southern insisted upon, including those Drummond considers "highly unusual, if not unheard of, in coal shipping contracts." Ala. Compl., ECF No. 86-4, at ¶¶ 32, 36, 37. Drummond points out that the Amended Contract requires performance by Drummond but requires nothing of Norfolk Southern other than to "live up to its legally required common carrier obligations." Id. at ¶ 33. Drummond specifically complains of the "Cancellation" provision that gives Norfolk Southern sole discretion to cease service to all contract destinations at any time, see 2006 Transportation Contract, ECF No. 86-3, ¶ 8, as well as the unreasonable "double dipping" provisions that provide for both rate escalation and fuel surcharges, see id. at ¶¶ 14, 15.

Count One may reference the Amended Contract, but Drummond's allegations plainly concern terms found in the original 2006 Transportation Contract—not provisions that were amended or added in 2010. So, too, would Norfolk Southern's alleged "monopolistic bargaining power" have existed at the time the parties' agreement was negotiated back in 2006. Thus, Drummond's claims that the parties' agreement is void as unconscionable, contains illegal and unenforceable terms, and lacks both mutuality of obligation and consideration could have been raised in the previous breach of contract action filed and settled in this court. As such, Count One of the Alabama complaint is

14

barred by Drummond's release of "all claims . . . of any kind whatsoever, known or unknown, arising or accruing from the beginning of time to the Effective Date of this mutual release, and arising out of the formation or performance of the Contract, including . . . all claims, defenses or avoidance that *could have been made or asserted in the Action.*" Mutual Release, ECF No. 86-2, at ¶ 4 (emphasis added); see also id. at ¶ 5 (defining "Effective Date").[3] [4]

   *b) Count Two*

Count Two of Drummond's Alabama complaint, asserting a claim for unjust enrichment, is barred for the same reason. In Count Two, Drummond "requests that the Contract be declared void" as "set forth above," and asks the court to require Norfolk Southern to repay monies it has been paid "since 2011 under this void Contract," as well as infrastructure improvement payments yet to be refunded to Drummond. Ala. Compl., ECF No. 86-4, at ¶¶ 40-43.

The unjust enrichment claim in Count Two is premised entirely on Drummond's allegations in Count One that the parties' Amended Contract is void. Under Virginia law, unjust enrichment is an implied contract action based on equitable principles. Butts v. Weltman, Weinberg & Reis Co., LPA, No. 1:13CV1026 JCC/IDD, 2013 WL 6039040, at *2 (E.D. Va. Nov. 14, 2013) (citing Kern v. Freed Co., Inc., 224 Va. 678, 680-81, 299 S.E.2d 363, 365 (1983)).

---

[3] "Courts interpret release agreements, like all contract terms, in light of the parties' expressed intentions." Adams v. United States, No. CIV.A.97-0706-R, 1999 WL 1059680, at *2 (W.D. Va. Mar. 3, 1999), aff'd, 201 F.3d 435 (4th Cir. 1999) (citing First Sec. Fed. Sav. Bank, Inc. v. McQuilken, 480 S.E.2d 485, 87 (Va. 1997)).

[4] In fact, Drummond conceded at the May 10, 2016 hearing that if the court rejects its novation argument, Count One is barred and must be stricken from its Alabama complaint. See Hearing Tr., ECF No. 110, at 34-35.

> A condition precedent to the assertion of such a claim is that no express contract exists between the parties. Vollmar v. CSX Transp., Inc., 705 F. Supp. 1154, 1176 (E.D. Va. 1989). Logic dictates that "an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter." S. Biscuit Co., Inc. v. Lloyd, 174 Va. 299, 311, 6 S.E. 2d 601 (1940). "[T]here can be no recovery in quantum meruit where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms." Ciliv v. UXB Int'l, Inc., Civil Action No. 7:12–cv–290, 2012 WL 5245323, at *2 (W.D. Va. Oct. 22, 2012) (citation and internal quotation marks omitted); see also U.S. ex rel. Badr v. Triple Canopy, Inc., Case No. 1:11–cv–288 (GBL/JFA), 2013 WL 3120204, at *15 (E.D. Va. June 19, 2013) (noting that a claim of unjust enrichment cannot survive when an express contract governs the parties' dispute).

Id. at *3.

Drummond cannot maintain a cause of action for unjust enrichment if it has a valid, express contract with Norfolk Southern. And the only allegations Drummond raises that the parties' Contract is invalid are those set forth in Count One. Count One is barred by the Mutual Release for the reasons set forth above. Because it is necessarily tied to Count One, Count Two is barred for those same reasons.

c) *Counts Three through Six*

Norfolk Southern concedes that Counts Three through Six of Drummond's Alabama complaint are not barred by the Mutual Release It argues nevertheless that the court should retain jurisdiction over these counts in order to avoid inefficient administration of justice.

In each of Counts Three through Six, Drummond seeks relief from performance under the Amended Contract for calendar year 2015 as well as future performance under the remaining Contract term. In Count Three, Drummond alleges excused performance as a

16

result of Norfolk Southern's failure to work in good faith to find alternatives that would allow Drummond to meet guaranteed volumes and avoid shortfall fees. Counts Four, Five, and Six stem from Drummond's allegation that governmental environmental regulations have prevented it from meeting guaranteed volume shipping requirements in 2015. Drummond frames Count Four in terms of force majeure, Count Five in terms of frustration of purpose, and Count Six in terms of impossibility/impracticability of performance.

Norfolk Southern argues Counts Five and Six mount a collateral attack on the Settlement Agreement as they seek to void Drummond's obligations under the Amended Contract. Therefore, these counts "fall within the exclusive jurisdiction and inherent authority of this Court to enforce the Settlement Agreement." NSRC Suppl. Br., ECF No. 114, at 7. Norfolk Southern asks the court to use its wide discretion to resolve these claims, which are factually interdependent with and require a working knowledge of the parties' Settlement Agreement. Norfolk Southern further asks the court to retain ancillary jurisdiction over Counts Three and Four in order to avoid disruption to justice.

The parties agreed that this court would retain jurisdiction to resolve "disputes regarding the terms of th[e] Settlement Agreement," as well as disputes "concerning the scope or construction of th[e] mutual release." Settlement Agreement, ECF No. 86-1, at ¶ 12; Mutual Release, ECF No. 86-2, at ¶ 7. Drummond's claims in Counts Three through Six of its Alabama complaint are premised on circumstances alleged to have occurred after the parties' settlement of the instant breach of contract case. Thus, they do not directly

17

implicate the terms of the Settlement Agreement or the scope or construction of the Mutual Release and do not squarely fall within the court's jurisdiction.

To be sure, the parties' assumptions and expectations at the time of execution of the Settlement Agreement, Mutual Release, and Amended Contract may come into play in resolving Counts Three through Six. But Drummond's point is not lost on the court: "The purpose of the forum selection clauses in [the Settlement Agreement and Mutual Release] was for this Court to enforce the dismissal and release of all such pre-existing claims. The purpose was not to appoint this Court arbiter of all aspects of the parties' business dealings going forward, or disputes based entirely on events occurring *after* the Prior Action was dismissed." Drummond Supp. Br., ECF No. 115, at 2-3 (emphasis in original). In retaining jurisdiction to enforce the terms of the Settlement Agreement and Mutual Release, this court did not intend to retain exclusive jurisdiction over the parties' contractual disputes in perpetuity.

There is no procedural avenue by which this court can reach into another district and bring certain claims into the jurisdiction of this court. All that is pending at present on the docket of this case is a motion to enforce the Settlement Agreement and Mutual Release. Because Counts Three through Six do not directly involve the terms of the parties' Settlement Agreement or scope or construction of their Mutual Release, the court will not undertake to resolve those claims at this time.

However, a motion to transfer pursuant to 28 U.S.C. § 1404(a) is pending in the Northern District of Alabama. Should Judge Kallon determine this court is better suited to resolve Drummond's claims in light of this court's history with the parties, the settlement,

18

and the Amended Contract, and taking into account the factors for transfer under 28 U.S.C. § 1404, the undersigned will consider the merits of Drummond's claims in due course. Whether transfer is appropriate under § 1404(a) is a decision to be made by Judge Kallon, not this court.

   d) *Count Seven*

Count Seven of Drummond's Alabama complaint contains two paragraphs:

> 68. [Drummond] realleges and incorporates by reference the allegations contain in paragraphs 1 through 66 as if set forth fully herein.
>
> 69. To the extent the Court declares in [Drummond's] favor, in whole or in part, as set forth above, [Drummond] requests that the Court rescind the Contract, or in the alternative, modify or reform it to account for the changed circumstances which have occurred since 2010.

Ala. Compl., ECF No. 86-4. To the extent the relief sought by Drummond in Count Seven is based on the relief sought in Count One, it is barred by the Mutual Release for the reasons stated supra. Without digging into the merits of Counts Three through Six, the court cannot say that Count Seven is barred in its entirety, however. As such, the merits of Count Seven should be addressed by the district judge who considers the merits of Counts Three through Six.

### III.

In sum, the court finds that Counts One and Two of Drummond's Alabama complaint—and Count Seven, to the extent dependent on Count One—are barred by the Mutual Release.

19

Counts Three through Six, and Count Seven as it relies on those counts, do not directly implicate the terms of the Settlement Agreement or scope or construction of the Mutual Release. Thus, the court declines to exercise any jurisdiction it may have to resolve these claims at this time. The court will defer to the presiding district judge in the Northern District of Alabama as to the appropriate venue to litigate the merits of those claims.

Finally, the court is not inclined to grant Norfolk Southern's request for attorneys' fees. The court is not aware of any applicable statutory or contractual fee-shifting provision, and it declines to award fees under its inherent sanction power. This case simply does not present the kind of bad faith or extraordinary circumstances that would warrant sanctions. See Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991); Hensley v. Alcon Laboratories, Inc., 277 F.3d 535, 543 (4th Cir. 2002).

Accordingly, the court will **GRANT in part** and **DENY in part** Norfolk Southern's Motion to Reopen the Case, Assign to Judge Urbanski, and Enforce Settlement Agreement and Mutual Release (ECF No. 85).

An appropriate Order will be entered.

Entered: 08-29-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge